IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  04-cv-01684-WYD-OES

ANTHONY CHAN, M.D.,

      Plaintiff,

v.

OCCUPATIONAL HEALTH CENTERS OF THE SOUTHWEST, P.A., d/b/a
CONCENTRA MEDICAL CENTERS; and
CONCENTRA HEALTH SERVICES, INC., d/b/a CONCENTRA MEDICAL CENTERS,

      Defendants.

---

## ORDER

---

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendants' Motion for Summary

Judgment filed July 29, 2005.  The case involves a claim of discrimination under the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621 *et seq.*, and a claim of

race or national origin discrimination under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §2000e-2(a)(1), and 42 U.S.C. §1981.

The undisputed facts pertinent to this case are as follows.  Plaintiff was born on

October 4, 1935 in China.  Plaintiff received his M.D. in China in 1956 and moved to

the United States in 1966.  In 1975, Plaintiff was licensed to practice medicine in

Colorado.  Plaintiff began his own practice, which lasted until 1995.  Subsequently,

Plaintiff worked as an emergency room physician for three years.

In 1998, at age 63, Plaintiff began employment with Defendants.  As a staff

physician Plaintiff performed medical examinations and other medical services for workers' compensation cases.  Plaintiff's employment was subject to a Physician's Service Agreement which provided that employment could be terminated by either party without cause on sixty days' notice.  At the beginning of his employment, Plaintiff was assigned to Defendants' East Clinic.  During the relevant time frame, Dr. Eric Tentori was the Medical Director of the East Clinic.  Early in Plaintiff's employment, Dr. Tentori spoke with Defendants' Regional Medical Director, Dr. Steven Gest, regarding Plaintiff's work at the East Clinic.  Dr. Tentori requested Dr. Gest transfer Plaintiff to one of Defendants' other clinics.  By the end of 1998, the majority of Plaintiff's work was at Defendants' South Clinic.

In July or August of 2001, Dr. William Somerset succeeded Dr. Gest as Regional Medical Director.  Plaintiff continued his work at Defendants' South Clinic for several months after Dr. Somerset became the Regional Medical Director.  On November 19, 2001, Dr. Somerset terminated Plaintiff's employment.

II.    ANALYSIS

    A.    Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of showing that no genuine issue of material fact exists.  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  In reviewing a summary

judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B.   <u>Whether Summary Judgment is Proper on Plaintiff's Age Discrimination</u>
<u>Claim</u>

"The ADEA states that it is unlawful for an employer 'to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . . '" *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000), *cert. denied*, 531 U.S. 876 (2000) (quoting 29 U.S.C. § 623(a)(1)). A plaintiff who seeks to prove that an employer discriminated against him on the basis of age "'can use either direct or circumstantial evidence.'" *Id.* (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th Cir. 1994)); *see also Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996).

"A plaintiff proves discrimination through direct evidence by establishing proof of 'an existing policy which itself constitutes discrimination.'" *Stone*, 210 F.3d at 1136 (quoting *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir. 1990)). "'Statements which on their face are expressions of personal opinion, however, can only support an inference of discrimination if the trier of fact finds the inference reasonable, and so constitute only circumstantial or indirect evidence of discrimination against the plaintiff.'" *Id.* (statement by supervisor that he did not know about the future

of the plaintiff's position with the company but that "at Stone's age, it would be difficult to train for another position" or "difficult to find a new job" did not constitute direct evidence) (quoting *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir.1996)).

In the case at hand, I find that Plaintiff has not presented direct evidence of discrimination, in that he has not presented proof of an existing policy which itself constitutes discrimination.  Plaintiff has produced evidence that after Plaintiff's termination, Defendants' Regional Medical Director made statements that Defendants "previous protocol had been to hire younger employees, that those employees were unreliable, and that he was changing that policy because mature employees were more dependable."  (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. [hereinafter Pl.'s Br.], Statement of Additional Undisputed and Disputed Facts, ¶ 2.)  These statements are focused on Defendants' hiring practices and make no reference to Plaintiff whatsoever. I find that these statements are not direct evidence of discrimination under *Stone* but are instead circumstantial evidence.  Because Plaintiff has not proven discrimination through direct evidence, he must prove his case through the burden shifting allocation of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

"Under this [*McDonnell Douglas*] framework the plaintiff must initially establish a prima facie case of discrimination."  *Rivera v. City and County of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).  In this case, Defendants concede that Plaintiff has established a prima facie case.  (Defs.' Mot. for Summ. J. at 10.)  Accordingly, the burden shifts to Defendants to establish a legitimate, nondiscriminatory reason for their action.  *Rivera*,

365 F.3d at 920.  Here, I find that Defendants have established a legitimate, nondiscriminatory reason for their action.  Defendants contend Plaintiff was fired because of problems with productivity, case management, and communication.  (Defs.' Mot. for Summ. J. at 10.)  Defendants presented evidence that during 2001, Plaintiff's supervisor, Dr. Burris, treated more patients than Plaintiff despite being responsible for the administrative duties at the South Clinic.  (*Id.*, Statement of Undisputed Facts, ¶ 16.)  Defendants presented evidence that Plaintiff had trouble with case management and was difficult to understand.  (*Id.* ¶¶ 8-9, 11-13, 17.)  Finally, Defendants offer two memoranda written by Plaintiff's colleagues, documenting the legitimate reasons for Defendants' decision to terminate Plaintiff's employment.  (*Id.* ¶¶ 8, 20.)

Because Defendants have met their burden, Plaintiff must present evidence of pretext to overcome summary judgment.  *Rivera*, 365 F.3d at 920.  "Pretext exists when an employer does not honestly represent its reasons for terminating an employee." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005) (citing and quoting the American Heritage Dictionary of the English Language (4th ed.2000) (pretext is defined as (1) 'An ostensible or professed purpose; an excuse' and (2) 'An effort or strategy intended to conceal something')).  "[W]hile rejection of the employer's explanation does not compel a finding of discrimination, 'it is permissible for the [factfinder] to infer the ultimate fact of discrimination from the falsity of the employer's explanation.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).  "'Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact

as affirmative evidence of guilt.'" *Id.* (quoting *Reeves*, 530 U.S. at 147).

"In drawing such inference, the factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions-simply disbelieving the employer is insufficient." *Miller*, 296 F.3d at 1111; *see also Greene*, 98 F.3d at 557 ("[t]o prevail on an ADEA claim a plaintiff 'must establish that age was a determining factor' in the employer's challenged decision'") (quotation omitted). "However, the evidence establishing the prima facie case, along with the reasonable inferences drawn therefrom, coupled with a disbelief of the employer's explanation, can be sufficient to make this finding." *Miller*, 296 F.3d at 1111.

In the case at hand, Plaintiff presents evidence that the stated reasons for the termination of his employment, that Plaintiff had problems with productivity, case management, and communications, may not have been true.  First, Plaintiff presents Dr. Somerset's statements discussed above.  (Pl.'s Br., Statement of Additional Undisputed and Disputed Facts, ¶ 1.)  While these statements on their own do not support a finding of pretext, *see Cone v. Longmont United Hosp. Assoc.*, 14 F.3d 526, 531 (10th Cir. 1994), a reasonable factfinder could begin to infer from Defendants' hiring practices that Defendants discriminated in their termination decisions.

Second, Plaintiff contends he was more productive than other doctors, including his supervisor.  Plaintiff presents evidence that he generated more charges for a larger dollar amount than Dr. Burris, Plaintiff's supervisor at the South Clinic.  (Pl.'s Br., Statement of Additional Undisputed and Disputed Facts, ¶ 16.)  Plaintiff's evidence

-6-

shows that in 2001 he had 12,456 charges for a total of $525,751.75, whereas Dr. Burris had 11,755 charges for a total of $503,078.04. (*Id.*) Further, while Defendants claim that Dr. Burris performed 868 more services than Plaintiff in 2001, Plaintiff presented evidence showing that the number of services performed could be misleading. According to Plaintiff, this is because the number can include "medications prescribed officially by that physician, even though a nurse practitioner or physician's assistant may have seen the patient in question and recommended that that patient receive that particular prescription medication." (*Id.*) The dispute over what these numbers actually show creates a triable issue of fact.

Third, Plaintiff counters Defendants' claim that Plaintiff had problems with communication and case management. Defendants claim they received complaints about Plaintiff's communication skills from patients, patients' employers, and insurance companies. (Defs.' Mot. for Summ. J., Statement of Undisputed Facts, ¶¶ 8, 10, 12, 18-19, 22-23, 25-26, 29.) Coworkers also testified they had trouble understanding Plaintiff when he spoke. (*Id.* ¶¶ 18, 25, 29.) Plaintiff presents evidence that no one could remember any specific instances or details associated with the complaints. (Pl.'s Br., Response to Statement of Allegedly Undisputed Facts, ¶¶ 8-10, 18-19, 23.) Further, Plaintiff asserts that Defendants do not have documentation of any specific complaints despite having a procedure in place to identify and process complaints. (*Id.* ¶¶ 13, 22; Statement of Additional Undisputed and Disputed Facts, ¶ 8.) Plaintiff presented evidence that Defendants had a policy to record patient complaints on a "quality assurance" form, but Defendants did not produce any of these forms during discovery.

(*Id.*)  Defendants also had a policy to enter any communications concerning patients, including complaints from insurance companies and employers, into a communications log.  (*Id.*)  According to Plaintiff, Defendants did not produce any records of complaints about Plaintiff from the communications log.  (*Id.*)

Further, Plaintiff presented evidence that his employment did not require him to have any verbal communications with patients' employers or insurance representatives. (*Id.*, Response to Statement of Allegedly Undisputed Facts, ¶ 6.)  Plaintiff's only communications with these groups was written, and Defendants do not contend that Plaintiff had any problems with his written communications.  (*Id.*)

In addition, Plaintiff presents evidence that Defendants' Regional Medical Director, Dr. Gest, recalled having complaints about more than half of Defendants' medical staff.  (*Id.* ¶ 12.)  A factfinder could infer from Plaintiff's evidence that the alleged complaints were a pretext for terminating Plaintiff's employment.  A genuine issue of material fact exists as to whether any complaints were made about Plaintiff.

Fourth, Plaintiff attempts to discredit the memoranda prepared by two of Defendants' doctors setting forth the reasons for Plaintiff's termination.  Plaintiff presents evidence that the memoranda were not prepared until more than a year after the decision to terminate Plaintiff, and six months after he filed an EEOC charge. (Pl.'s Br. at 14.)Pg. 14.  Further, Plaintiff argues that the memo written by Dr. Tentori was written at least four years after Dr. Tentori supervised Plaintiff.  (*Id.* at 12.)  According to Plaintiff, these two memos are the only documentation for Defendants' decision, and they were not created until charges were filed with the EEOC.  (*Id.*)  A factfinder could

infer pretext from Defendants' delay in documenting the reasons for termination.

Finally, Plaintiff cites statistics to show that the "median age of full-time physicians and clinical medical directors who were discharged or resigned under pressure (54.1 years) was 7.2 years older than the median age of all of the full-time physicians and clinical medical directors (46.9 years) employed by Defendants." (*Id.* at 14.)  Plaintiff's statistical data is not convincing.  "[S]tatistical data showing an employer's pattern of conduct toward a protected class can create an inference that an employer discriminated against individual members of the class." *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1995)(citation omitted).  In order for statistical evidence to create such an inference, it "must show a significant disparity and eliminate nondiscriminatory explanations for the disparity." *Id.*  While there may be a question as to whether 7.2 years is a significant disparity, Plaintiff has failed to eliminate nondiscriminatory reasons for the numerical disparities.

Even though Plaintiff's statistical data is not conclusive on the point, the rest of the evidence, taken as a whole, establishes genuine issues of material fact on the issue of pretext.

     C.    <u>Whether Summary Judgment is Proper on Plaintiff's Race or National Origin Discrimination Claim</u>

Title VII states that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individuals race, color . . . or national origin." 42 U.S.C.

§ 2000e-2(a)(1) (1994).  Race or national origin discrimination claims and age discrimination claims are analyzed in the same manner.  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002)(applying the same three step test laid out in *McDonnell* to both race and age discrimination claims).

In this case, Plaintiff does not claim any direct discrimination relating to his race or national origin, so he must prove his case through the burden shifting allocation laid out in *McDonnell*, 411 U.S. at 802-04.  As with the ADEA claim, Defendants have conceded that Plaintiff has made a prima facie case of race or national origin discrimination.  (Defs.' Mot. for Summ. J. at 10.)The burden then shifts to Defendants to show a legitimate, nondiscriminatory reason for their action.   Based on the same evidence as discussed in the ADEA claim, I find Defendants have met their burden.

Plaintiff must then present evidence showing Defendants reasons are a pretext for discrimination.  *Rivera*, 365 F. 3d at 920.  Plaintiff does not differentiate between his age discrimination claim and his race or national origin discrimination claim in his argument opposing summary judgment.  (*See* Pl.'s Br.)  Because most of Plaintiff's evidence is aimed at disproving Defendants' explanation for terminating Plaintiff's employment, there is little difference in the analysis of the age discrimination and race or national origin discrimination claims.  The only evidence presented by Plaintiff that does not apply to both claims are the statements made by Dr. Somerset regarding Defendants' protocol of hiring younger doctors.  I find that even without these statements, Plaintiff has presented enough evidence to create an issue of material fact. As with the age discrimination claim, a factfinder considering Plaintiff's prima facie case

-10-

and evidence, could infer that Defendants' reasons for firing Plaintiff were pretextual.

III.   CONCLUSION

For the above stated reasons, I find that genuine issues of material fact exist concerning whether Defendants reasons for terminating Plaintiff's employment were a pretext for unlawful age, race or national origin discrimination.  Therefore, summary judgment on these claims is improper.  Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment filed July 29, 2005 (docket #28), is **DENIED**.

Dated:  July 27, 2006

BY THE COURT:
s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge